# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

B.H., a minor, by his mother )
Teresa Hayes, )
)
        Plaintiff, )
) CAUSE NO. 3:17-CV-00335
v. )
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
)
        Defendant. )

## OPINION AND ORDER

Plaintiff, Teresa Hayes, brings this action on behalf of her minor son, B.H., pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for review of Defendant's final administrative decision denying B.H.'s application for supplemental security income (SSI). I find that the ALJ's decision was not supported by substantial evidence because he did not properly consider four of the functional equivalence domains used to determine if a child is disabled.

### Background

B.H. filed for Supplemental Security Income benefits when he was 13 years old, and the initial claim was denied. [Tr. 161-66, 90-93.][1] B.H. then had a hearing before an administrative law judge who ultimately issued a decision denying benefits. [Tr. 41-64.]

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 10.

The ALJ found B.H. had the following severe impairments: attention-deficit hyperactivity disorder ("ADHD"), expressive language disorder, scoliosis, neck pain, patellar mal-alignment syndrome, and Ehlers-Danlos disease (which is a connective tissue disorder). [DE 47.] But the ALJ found B.H. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and B.H. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. [*Id.*] The ALJ found B.H. had less than marked limitation in the six functional equivalence domains.

B.H. is home schooled and receives speech therapy through the local school system. [Tr. 191.] B.H.'s medical issues are described in a comprehensive fashion in the ALJ's opinion, and need not be recited in their entirety here. [Tr. 48-59.]

## Discussion

In reviewing the work of the ALJ, my role is limited. It is impermissible for me to "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [my] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Instead, my review of an ALJ's decision is limited to determining whether the decision is supported by substantial evidence. "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* "[T]he ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citation omitted). Where the Commissioner's decision

2

"lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under Supplemental Security Income rules, a child is disabled if he has a "medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. This assessment has a three-step analysis. 20 C.F.R. § 416.924(a). At step one, if the child is engaged in substantial gainful activity, then he is not disabled. *Id.* At step two, if the child does not have a severe medical impairment or combinations of impairments, then he is not disabled. *Id.* At step three, a child will qualify as disabled only if his impairments "meet," "medically equal," or "functionally equal" any of the listings. *Id.*

The issue in this case is whether B.H. functionally equaled any of the listings. To determine if a child's impairments are "functionally equivalent" to a listing, an ALJ analyzes their severity in six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see Sanchez v. Barnhart*, 467 F.3d 1081, 1082 (7th Cir. 2006) (rationalizing since children do not generally have work history, the structure of the disability program for them differs from that for adults, and focuses on the functioning of the child in specific areas of life activity).

For a child to functionally equal a listing, the ALJ must find an "extreme"

3

limitation in one domain or a "marked" limitation in two domains. 20 C.F.R. § 416.926a(a), (e)(2)(i). An "extreme" limitation occurs when the impairment interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). A "marked" limitation is one which interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

B.H. argues that the ALJ did not set forth a supported rationale for finding a less than marked limitation in the domains of: "acquiring and using information," "attending and completing tasks," "moving about and manipulating objects," and "health and physical well-being." [DE 16 at 1-5.]

Acquiring and Using Information

For the domain of acquiring and using information, the ALJ found: "The claimant has less than marked limitation in acquiring and using information. Considering the plethora of intelligence testing in the evidence and detailed in this determination, the claimant certainly has no more tha[n] a less than marked limitation in his ability to acquire and use information." [Tr. 54 (emphasis in original).]

The "acquiring and using of information" domain measures more than just intelligence, or IQ — it refers to how well a child acquires or learns information and how well he uses the information he has learned. *Hopggod ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (citing 20 C.F.R. § 416.926a(g)). As Social Security Ruling ("SSR") 09-3p makes clear, the domain of acquiring and using information "considers

4

more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school." SSR 09-3P, 2009 WL 396025 (Feb. 17, 2009). Moreover, the regulations are clear that an ALJ may not rely on any single test score when deciding if an impairment is marked or extreme. 20 C.F.R. § 416.926a(e)(4)(I); 416.924a(1)(ii) (stating in evaluating children for disability, "we will not rely on test scores alone when we decide whether you are disabled.").

In this case, the ALJ erred by failing to mention and consider B.H.'s ADHD and expressive language disorder in considering this domain. While B.H.'s composite IQ score was 88 [Tr. 49], the examiner who evaluated B.H. for ADHD on January 8, 2013, also noted that B.H. talked during the tasks about unrelated things, answered impulsively, he was easily distracted, had difficulty maintaining attention and concentration, talked excessively, and his scores reflected a moderate expressive language disorder. [Tr. 568-78.] Additionally, B.H.'s speech therapist stated that B.H. shows memory deficits and does not retain new learning, he requires multiple repetitions of the same language tasks, he constantly interrupts and does not process what is said to him, his use of language could be "convoluted and difficult to follow," and he "will have difficulty learning and then retaining any new material." [Tr. 611.] B.H.'s psychoeducational evaluation through school on May 28, 2014, revealed that B.H. talked to himself during the Woodcock-Johnson-III test, was "highly active with constant body movement," and his performance with written expression was in the very low range. [Tr. 283-84.]

The ALJ did summarize most of this medical evidence earlier in his opinion, but the ALJ failed to address it at all in this domain, leaving the Court to guess how he accorded sole importance to the intelligence testing, and seemingly none to B.H.'s ADHD, language disorder, and his ability to concentrate and learn new material. In sum, the ALJ did not "build a logical bridge between the evidence and his conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Therefore, substantial evidence does not support the ALJ's findings on this issue.

Attending and Completing Tasks

The ALJ found: "[t]he claimant has less than marked limitation in attending and completing tasks. Considering the claimant's documented ability to sustain attention and concentration, focus, and his resulting performance in subjects, as well as his impairments, and this limitation is supported. In addition, as documented earlier, the claimant's physician has noted good response to medications." [Tr. 55 (emphasis in original).]

As in the first domain, I again conclude the ALJ did not support his findings with substantial evidence. The ALJ summarizes the medical record earlier in his opinion, but he completely fails to address important information in this domain, including B.H.'s ADHD. For example, as of May 20, 2016, B.H. had only earned 10 credits towards his high school diploma, his school records show that some of his language skills were below the tenth percentile, B.H. was easily distracted, the school found he needed to test alone because he talked and asked questions during the testing, and B.H. had

6

medication and dosage changes to try to control his ADHD symptoms. [Tr. 285-97, 563-64, 760, 830, 930-32.] The ALJ's perfunctory analysis of this domain is not sufficiently backed by evidence.

Moving and Manipulating Objects

Here's what the ALJ found on this domain:

> <u>The claimant has less than marked limitation in moving about and manipulating objects.</u> The lion's share of the medical evidence discussed earlier relates to this functional limitation, but much of the medical evidence is before the protective filing date, or prior to the time to be considered for disability status herein, although the entire record was taken into consideration. The claimant has an established connective tissue disorder that is the root of his multiple dislocations in his knees bilaterally, for which he has undergone two surgeries and continues to engage in physical therapy. The record notes the claimant uses a brace following his dislocations or surgery with good results and regaining full range of motion thereafter. Considering Dr. Berrios's statement regarding the claimant's ability to engage in physical activity and the evidence as a whole, the claimant has a less than marked limitation in his ability to move about and manipulate objects.

[Tr. 57 (emphasis in original).] The ALJ recognized that this domain looks at a child's strength, coordination, and "ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching, and hitting balls in informal play or organized sports." [Tr. 56.] Additionally, the Social Security rules note "that an adolescent should be able to use his motor skills to move freely and easily at home, at school, and in the community" and that they "should be able to participate in a full range of individual and group physical fitness activities." [*Id.*]

While the ALJ's analysis was longer in this domain, it is still insufficient. An ALJ

7

is required to "confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). In this case, the ALJ summarized medical evidence early in his opinion, including: (1) Dr. French who noted B.H. had "an antalgic gait, was awkward with running, unable to skip "; (2) B.H. had fallen several times and dislocated his right knee; (3) the finding of Dr. Berrios (B.H.'s treating orthopedist), "that due to the claimant's Ehlers-Danlos impairment, he has difficulty walking long distances, difficulty going up and down steps, and occasional difficulty sitting"; and (4) B.H. was not allowed to do any sports. [Tr. 51-52.] But the ALJ did not address or explain why he did not credit Dr. Berrios' statement and this other evidence in the record suggesting that B.H. cannot move about freely in different environments.

"[A]lthough the ALJ need not discuss every piece of evidence in the record, [he] may not ignore an entire line of evidence that is contrary to the ruling. Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted). Here, the ALJ should have, at a minimum, addressed Dr. Berrios' finding that B.H. had difficulty walking long distances, going up and down steps, and occasionally difficulty sitting.

<u>Health and Physical Well-Being</u>

The ALJ found:

> <u>The claimant has less than marked limitation in health and physical</u>

8

> well-being. The evidence demonstrates that the claimant is closely followed by his orthopedist and while he has conditions that require regular monitoring, he generally has recovered well after instances of patella dislocation or surgery. Accordingly, the claimant has less than marked limitations in his health and physical well-being.

[Tr. 59.] This domain addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health and sense of physical well-being. 20 C.F.R. § 416.929a(1) and SSR 09-8p.

The ALJ's rationale for this domain (that B.H. is closely followed by his orthopedist and recovers well after knee surgery) does not entirely square with the record. The ALJ fails to address the testimony in the hearing that B.H. needed a third knee surgery because the previous repair was not successful. [Tr. 20.] Looking at the record in its entirety seems to show that B.H. has a chronic, life-long connective tissue condition which has already required multiple surgeries. B.H.'s mother testified that he has a lifelong condition and will ultimately end up in a wheelchair. [Tr. 20.] On remand, the ALJ should re-evaluate the health and physical well-being domain, making sure to consider all of the evidence in the record.

On Remand

In sum, I find that the ALJ's decision was not supported by substantial evidence. However, an outright reversal of the ALJ's decision is not appropriate because there is evidence in the record that could support a finding of non-disability. An award of benefits "is appropriate only if all factual issues have been resolved," *Briscoe ex rel.*

*Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005), and where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). In this case, where the ALJ failed to confront evidence in the record and failed to sufficiently articulate his reasoning for the domains of: acquiring and using information, attending and completing tasks, moving about and manipulating objects, and health and physical well-being, remand is necessary so the ALJ may connect the evidence in the record with his determinations. "On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

One final note, B.H. also argued that remand is necessary because the Appeals Council did not consider additional evidence of a third knee surgery on November 17, 2015 (just before the ALJ's decision dated December 28, 2015). Because this case is being remanded on other grounds, I do not need to determine whether remand is also necessary under sentence six of 42 U.S.C. § 405(g) (regarding remand for new evidence). *See Smith ex rel. Smith v. Astrue*, No. 1:08-cv-1170-LJM-TAB, 2010 WL 679787, at *2 (S.D. Ind. Feb. 22, 2010). However, on remand, the ALJ shall consider all new evidence that B.H. submits in support of his application. *Id.*

## Conclusion

Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is **REVERSED** and the case is **REMANDED** to the Commissioner for further proceedings consistent

10

with this opinion. Specifically, the ALJ should re-evaluate the limitations in the domains of: acquiring and using information, attending and completing tasks, moving about and manipulating objects, and health and physical well-being.

**SO ORDERED**.

ENTERED: June 8, 2018

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**